# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA,          ) | |
|                 Plaintiff,          ) | |
| v.                                                            ) | |
|                                    ) | |
| KEINO ARMSTRONG, LESTER        ) | CRIM NO. 2008-12 |
| ROBERTS, and MARIO ROBLES,     ) | |
|                 Defendants.       ) | |
| _____) | |

## MEMORANDUM OPINION

Finch, Senior Judge.

THIS MATTER comes before the Court on the Motion to Suppress filed by Defendant Keino Armstrong, with which Defendants Mario Robles and Lester Roberts have joined. A hearing was held on December 1, 2008. Defendants seek to suppress evidence, including marijuana plants, that were seized without a warrant. They also assert that their arrests were illegal for lack of a warrant. Finally, Robles seeks suppression of a statement that he made after being arrested.

### I.     Facts

As part of a marijuana eradication effort, a Virgin Islands Police Department Officer assigned to the High Intensity Drug Trafficking Area (HIDTA) Task Force flew in a single-engine winged aircraft looking for marijuana plants in the Oxford area of St. Croix, Virgin Islands on April 8, 2008. The Officer saw a clearing with rows of plants in black pots and took aerial photographs.

The next day, the Officer drove to a dirt road with access to the clearing. A fence ran along the property and a chain, marked with a "No Trespassing" sign, was strung across the dirt

road. The clearing with the plants could not be seen from the intersection of the dirt road with the public road.

The Officer went under the chain and traveled along the dirt road for about 2,000 feet. The property was undeveloped, in that it did not have any shelter, such as a house or even a shack. There was no electricity running to the property. Although a house stood on one neighboring plot and a house was being constructed on another neighboring plot, there were no residential structures on the plot in question.

As he approached the clearing, the Officer saw four tied dogs. Horses were also kept in the area. Mango trees grew in the vicinity as well as a pumpkin vine.

When the Officer got to where he had a good view of the plants, he set up cameras to record the people who tended the plants. Upon his subsequent review of the recordings, he saw three people caring for the plants. The three people had driven in a pickup truck to the clearing.

On the morning of April 16th, law enforcement officers arrived at the clearing early in the morning and waited for people to come to tend the pants. When the people were watering and fertilizing the plants, the officers arrested them.

After he was arrested, Robles stated that he was going to get rid of the dogs because they were not doing their job. The Officer testified that Robles did not make this statement until after he was advised of his Miranda rights and that he did not make the statement in response to any questions.

II.   Analysis

"[N]o expectation of privacy legitimately attaches to open fields." Oliver v. United

2

States, 466 U.S. 170, 180 (1984). "[O]pen fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields." Id. at 179. Therefore, the Fourth Amendment's protection of "persons, houses, papers, and effects" from unreasonable searches and seizures does not apply to open fields and no warrant is required to search an open field.

Under the "open fields" doctrine, any property beyond the curtilage is not afforded Fourth Amendment protection. Id. at 180. The "curtilage" is described as an area that "harbors the intimate activity associated with the sanctity of one's home and the privacies of life." United States v. Dunn, 480 U.S. 294, 300 (1987) (quotation omitted). Whether property is within the curtilage is a question of fact. United States v. Benish, 5 F.3d 20, 23-24 (3d Cir. 1993). "[T]he extent of curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself," including such factors as:

> (1) "the proximity of the area claimed to be curtilage to the home";
> (2) "whether the area is included within an enclosure surrounding the home";
> (3) "the nature of the uses to which the area is put"; and
> (4) "the steps taken by the resident to protect the area from observation by people passing by."

Dunn, 480 U.S. at 300-01.

The clearing in which the Officer observed the marijuana plant was not near a home, nor was it included within any enclosure surrounding a home. The clearing was not used for any residential purposes; noone lived there. That there may have been a fence surrounding the entire property and a chain across the access road, is not sufficient for the area to be considered one in which society would reasonably expect the same privacy as within a home. The clearing was not

within the curtilage, but rather was an open field.  Thus, the Officer needed neither a reasonable suspicion nor probable cause to search.

Under the "plain-view" doctrine, when an officer does not violate the Fourth Amendment in arriving at the place from which the evidence can be plainly viewed and the evidence's incriminating character is immediately apparent, warrantless seizure does not offend the Fourth Amendment.  Because the open fields doctrine applied, the Officer's presence and search of the clearing did not violate Defendants' Fourth Amendment rights.  Once he saw the plants in the clearing, from his training and experience with the HIDTA Task Force, he reasonably believed them to be marijuana.  Therefore, the seizure of the marijuana plants was proper under the plain-view doctrine.

A warrantless arrest is permissible when "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).  The law enforcement officers arrested the three Defendants as they were committing the offense of cultivating marijuana on April 16, 2008.  Therefore, arrest warrants were not required under the Fourth Amendment.

Although Robles was in custody at the time that he made a comment concerning the dogs, he was not being interrogated.  "Volunteered statements of any kind are not barred by the Fifth Amendment. . . ." Miranda v. Arizona, 384 U.S. 436, 478 (1966).  Because Robles made the statement when he was not being subject to any form of questioning, admission of such statement would not violate his constitutional rights.  Moreover, the uncontroverted testimony is that Robles was advised of his Miranda rights before mentioning the dogs.

### III.   Conclusion

The motion to suppress is denied as to the seizure of the marijuana because the Officer did not violate Defendants' constitutional rights in searching the property since the entire property fell within the definition of an open field.  When the Officer entered the clearing in which the marijuana was being grown, its incriminating nature was apparent. Therefore, seizure was proper under the plain-view doctrine.  The Defendants' warrantless arrests were not unconstitutional in that they were observed engaged in criminal activity.  Finally, because Robles voluntarily commented about the dogs' failure to do their job, without any question being posed, and because he was advised of his <u>Miranda</u> rights, admission of his statement is not barred.

ENTER:

DATE:       February 4, 2009                    _____/s/_____
                                                RAYMOND L. FINCH
                                                SENIOR DISTRICT JUDGE